UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC.,<br><br>*Defendant*. | Case No.: |

**[PROPOSED] FINAL JUDGMENT**

WHEREAS, Plaintiff, the United States of America, filed its Complaint on April 3, 2023, alleging that Defendant Activision Blizzard, Inc. violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

AND WHEREAS, the United States and Defendant have consented to the entry of this Final Judgment ("Final Judgment") without the taking of testimony, without trial or adjudication of any issue of fact or law, without the Final Judgment constituting any evidence against or admission by any party relating to any issue of fact or law, and without Defendant admitting liability, wrongdoing, or the truth of any allegations in the Complaint;

AND WHEREAS, Defendant represents that it ceased enforcement of the "Competitive Balance Tax," a rule in the Call of Duty League and Overwatch League that required any Team that exceeded an upper threshold of Compensation to pay a tax to be distributed to all other Teams not exceeding that threshold, and agrees to undertake certain additional actions and refrain from certain conduct for the purpose of remedying the anticompetitive effects alleged in the Complaint;

1

AND WHEREAS, Defendant represents that the relief required by the Final Judgment can and will be made and that Defendant will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of the Final Judgment;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I.     JURISDICTION

This Court has jurisdiction over the subject matter of this action and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendant under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## II.    DEFINITIONS

As used in the Final Judgment:

A.     "Activision" and "Defendant" mean Activision Blizzard, Inc., a Delaware corporation with its headquarters in Santa Monica, California, its successors and assigns, and its subsidiaries (including The Overwatch League, LLC and The Call of Duty League, LLC), divisions, groups, affiliates, partnerships, and joint ventures, and their owner(s) and operator(s), directors, officers, managers, agents, representatives, and employees.

B.     "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

C.     "Compensation" means all forms of wages, bonuses, and other payment for work rendered, and benefits, including housing and meal payments, insurance coverage, paid time off, vacation or personal leave, and annual or sick leave, but not including any (i) prize pool to be awarded by Defendant or Defendant's licensee to any Teams or players in any Professional Esports League, or (ii) marketing or promotional funding to be provided by Defendant or Defendant's licensee to any Teams or players in any Professional Esports League.

D. "Esports Personnel" means all officers of Defendant, and anyone employed by Defendant who is involved in the business or operations of any Professional Esports League.

E. "Including" means including, but not limited to.

F. "Non-statutory Labor Exemption" means the common law exemption from scrutiny under the antitrust laws that applies to concerted action or agreements imposed through the collective bargaining process between unions and nonlabor parties, as set forth in *Brown v. Pro Football, Inc.*, 518 U.S. 231 (1996), and related decisional law.

G. "Person" means any natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, governmental unit, or other legal entity.

H. "Professional Esports League" means any league in which video game players receive Compensation to compete for teams against other teams in a league format, where such league (i) is owned or controlled by Defendant, including the Call of Duty League and the Overwatch League; or (ii) features any video game owned or controlled by Defendant and as to which Defendant determines the rules regarding player Compensation, but excluding any amateur tournament or any league that operates entirely outside the United States.

I. "Team" means any team in any Professional Esports League, including its owner(s) and operator(s), directors, officers, managers, agents, representatives, and employees.

J. The "Call of Duty League" means the Professional Esports League featuring the video game *Call of Duty* (including all versions, sequels, and offshoots of the game), its owner(s) and operator(s), directors, officers, managers, agents, representatives, and employees.

K.  The "Overwatch League" means the Professional Esports League featuring the video game *Overwatch* (including all versions, sequels, and offshoots of the game), its owner(s) and operator(s), directors, officers, managers, agents, representatives, and employees.

### III. APPLICABILITY

The Final Judgment applies to Defendant and all other Persons in active concert or participation with Defendant who receive actual notice of the Final Judgment.

### IV. PROHIBITED CONDUCT

A.  Defendant must not impose any rule that would, directly or indirectly, impose an upper limit on Compensation for any player or players in any Professional Esports League, including any rule that requires or incentivizes any Team to impose an upper limit on its players' Compensation or imposes a tax, fine, or other penalty on any Team as a result of exceeding a certain amount of Compensation for its players.

### V. CONDUCT NOT PROHIBITED

A.  Nothing in Section IV prohibits Defendant from implementing any rule or engaging in any conduct covered by any applicable labor exemption (e.g., the Non-statutory Labor Exemption).

B.  Nothing in Section IV prohibits Defendant from determining the Compensation to be paid to its own employees, including player employees of Teams in any Professional Esports League in which Defendant owns all of the Teams.

### VI. REQUIRED CONDUCT

A.  Within 20 days of entry of the Final Judgment, Defendant must certify in an affidavit from a senior legal officer that it has ended and will not implement or reinstate any rule that, directly or indirectly, imposes an upper limit on Compensation for any player or players in

any Professional Esports League, including any rule that requires or incentivizes any Team to impose an upper limit on its players' Compensation or imposes a tax, fine, or other penalty on any Team as a result of exceeding a certain amount of Compensation for its players.

      B.      Within 20 days of entry of the Final Judgment, Defendant must (i) identify or appoint a senior legal officer responsible for the supervision of Defendant's compliance with the terms and conditions of the Final Judgment and communicate to the United States all certifications and reports required by the Final Judgment, and (ii) provide to the United States the officer's name, business address, telephone number, and email address. Within 30 days of the departure of the designated senior legal officer or within 30 days of a decision by Defendant to identify or appoint a replacement, Defendant must provide to the United States the replacement officer's name, business address, telephone number, and email address. Defendant's initial identification or appointment of a senior legal officer, and identification or appointment of any replacement senior legal officer, are subject to the approval of the United States, in its sole discretion.

      C.      Any senior legal officer identified or appointed in accordance with this Section VI must be an active member in good standing of the bar in any U.S. jurisdiction and must have, or must retain outside counsel who has, at least five years of legal experience, including experience with antitrust matters.

      D.      The Defendant and senior legal officer must:

            1.      within 30 days of entry of the Final Judgment, provide to all Esports Personnel, a director, officer, or manager of each Team, and, to the extent roster and contact information is known to Defendant, all players in all Professional Esports Leagues (i) a copy of the Final Judgment and the

    Competitive Impact Statement filed in this action, and (ii) in a manner to be devised by Defendant and approved by the United States, in its sole discretion, notice of the meaning and requirements of the Final Judgment;

2. within 30 days of entry of the Final Judgment, implement (i) a revised antitrust compliance policy, which must be approved by the United States, in its sole discretion, and (ii) a whistleblower protection policy, which must be approved by the United States, in its sole discretion, and which provides that any Person may disclose information concerning any violation or potential violation of the Final Judgment or the antitrust laws to the senior legal officer identified or appointed under this Section VI, without reprisal for such disclosure;

3. annually provide to all Esports Personnel notice of the meaning and requirements of the Final Judgment, in a manner to be devised by Defendant and approved by the United States, in its sole discretion, and the antitrust compliance and whistleblower protection policies implemented pursuant to Paragraph VI(D)(2);

4. provide any Person who becomes an Esports Personnel, within 30 days of their assuming such role, (i) a copy of the Final Judgment and the Competitive Impact Statement filed in this action, (ii) notice of the meaning and requirements of the Final Judgment, in a manner to be devised by Defendant and approved by the United States, in its sole discretion, and (iii) the antitrust compliance and whistleblower protection policies implemented pursuant to Paragraph VI(D)(2);

5. obtain from all Esports Personnel, within 30 days of each such Person's receipt of the Final Judgment, a written certification that each such Person (i) has read and understands and agrees to abide by the terms of the Final Judgment, (ii) is not aware of any violation of the Final Judgment that has not been reported to Defendant, and (iii) understands that any failure to comply with the Final Judgment may result in an enforcement action for civil or criminal contempt of court against Defendant or any Person who violates the Final Judgment;

6. annually provide to a director, officer, or manager of each Team (i) a copy of the Final Judgment and the Competitive Impact Statement filed in this action, and (ii) notice of the meaning and requirements of the Final Judgment, in a manner to be devised by Defendant and approved by the United States, in its sole discretion;

7. in the event of a change of control of any Team, provide to a director, officer, or manager of that Team, within 30 days of any such change of control, (i) a copy of the Final Judgment and the Competitive Impact Statement filed in this action, and (ii) notice of the meaning and requirements of the Final Judgment, in a manner to be devised by Defendant and approved by the United States, in its sole discretion; and

8. certify in writing to the United States annually 30 days after the anniversary date of the entry of the Final Judgment that Defendant has complied with the provisions of the Final Judgment, with such writing including: (i) a list identifying all Esports Personnel and other Persons

        who received the materials required by Paragraphs VI(D)(3)-(7); and (ii) copies of all certifications obtained under Paragraph VI(D)(5).

E.    Upon learning of any violation or potential violation of any of the terms and conditions contained in the Final Judgment, Defendant must:

    1.    promptly take appropriate action to terminate or modify the activity so as to comply with the Final Judgment;

    2.    maintain all documents related to any violation or potential violation of the Final Judgment for the duration of the Final Judgment;

    3.    within 30 days of learning of any violation or potential violation of any of the terms and conditions contained in the Final Judgment, file with the United States a statement describing the violation or potential violation and any steps Defendant has taken to address the violation or potential violation; and

    4.    at the United States' request, furnish to the United States a log of all documents maintained under Paragraph VI(F)(2), including identifying any such documents for which Defendant claims protection under the attorney-client privilege or the attorney work product doctrine.

## VII.    COMPLIANCE INSPECTION

A.    For the purposes of determining or securing compliance with the Final Judgment or of determining whether the Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Defendant, Defendant must permit, from time to time and

subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

    1.    to have access during Defendant's office hours to inspect and copy, or at the option of the United States, to require Defendant to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendant relating to any matters contained in the Final Judgment; and

    2.    to interview, either informally or on the record, Defendant's officers, employees, or agents, who may have their individual counsel present, relating to any matters contained in the Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendant.

B.    For the purposes of determining or securing compliance with the Final Judgment or of determining whether the Final Judgment should be modified or vacated, upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Defendant must submit written reports or respond to written interrogatories, under oath if requested, relating to any matters contained in the Final Judgment.

## VIII.   PUBLIC DISCLOSURE

A.    No information or documents obtained pursuant to any provision the Final Judgment may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party, including grand-jury proceedings, for the purpose of securing compliance with the Final Judgment, or as otherwise required by law.

B. In the event of a request by a third party, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, for disclosure of information obtained pursuant to any provision of the Final Judgment, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. When submitting information to the Antitrust Division, Defendant should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire 10 years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

C. If at the time that Defendant furnishes information or documents to the United States pursuant to any provision of the Final Judgment, Defendant represents and identifies in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give Defendant 10 calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## IX. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to the Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe the Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## X.     ENFORCEMENT OF FINAL JUDGMENT

A.     The United States retains and reserves all rights to enforce the provisions of the Final Judgment, including the right to seek an order of contempt from the Court. Defendant agrees that in a civil contempt action, a motion to show cause, or a similar action brought by the United States relating to an alleged violation of the Final Judgment, the United States may establish a violation of the Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendant waives any argument that a different standard of proof should apply.

B.     The Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleges was harmed by the challenged conduct. Defendant agrees that it may be held in contempt of, and that the Court may enforce, any provision of the Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of the Final Judgment should not be construed against either party as the drafter.

C.     In an enforcement proceeding in which the Court finds that Defendant has violated the Final Judgment, the United States may apply to the Court for an extension of the Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States to enforce the Final Judgment against Defendant, whether litigated or resolved before litigation, Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in

connection with that effort to enforce the Final Judgment, including in the investigation of the potential violation.

D.  For a period of four years following the expiration of the Final Judgment, if the United States has evidence that Defendant violated the Final Judgment before it expired, the United States may file an action against Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of the Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure Defendant complies with the terms of the Final Judgment; and (4) fees or expenses as called for by this Section X.

## XI.   EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, the Final Judgment will expire five years from the date of its entry, except that the Final Judgment may be terminated earlier upon notice by the United States to the Court and Defendant that continuation of the Final Judgment is no longer necessary or in the public interest. All requirements, including all notice, certification, and reporting requirements imposed by Section VI.D, shall terminate automatically upon the expiration of this Final Judgment.

## XII.   RESERVATION OF RIGHTS

The Final Judgment terminates only the claims expressly stated in the Complaint. The Final Judgment does not in any way affect any other charges or claims filed by the United States subsequent to the commencement of this action.

## XIII.   NOTICE

For purposes of the Final Judgment, any notice or other communication required to be filed with or provided to the United States must be sent to the address set forth below (or such other address as the United States may specify in writing to Defendant):

Chief
Civil Conduct Task Force
U.S. Department of Justice
Antitrust Division
450 Fifth Street
Washington, DC 20530
ATRJudgmentCompliance@usdoj.gov.

## XIV.   PUBLIC INTEREST DETERMINATION

Entry of the Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of the Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact Statement and, if applicable, any comments and response to comments filed with the Court, entry of the Final Judgment is in the public interest.

Date: _____, 2023

[Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16]

_____
United States District Judge